IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>XAVIER RASHAAD BLANTON,<br><br>Defendant. | **4:24CR3085**<br><br><br>**MEMORANDUM AND ORDER** |

This case is before the Court on Defendant's Denial of the Government's Information of Prior Conviction. (Filing No. 111.) An evidentiary hearing was held regarding the matter on March 18, 2026. Having considered the issues presented, the Court denies Defendant's Denial and finds that his prior conviction is a "serious drug felony" under 21 U.S.C. § 841(b)(1)(B).

## BACKGROUND

On August 11, 2021, Defendant was convicted by the District Court of Lancaster County, Nebraska of Attempt to Deliver or with Intent to Deliver a Controlled Substance, in particular, cocaine, in violation of Neb. Rev. Stat. §§ 28-201(4)(B) and 28-416(1)(2)(A). (Ex. 1; Filing No. 112.) Defendant was sentenced to 4-6 years in prison. (Filing No. 90.)

On October 22, 2024, Defendant was indicted in this case for conspiracy to distribute 40 grams or more of fentanyl with a prior conviction for a serious drug felony, as well as possession with intent to distribute 40 grams or more of fentanyl, cocaine and marijuana with a prior conviction for a serious drug felony. (Filing No. 1.) The Indictment alleges that Defendant "had a final conviction for a serious drug felony, namely, a conviction under Nebraska Revised Statute § 28-416 for attempted possession with intent to distribute a controlled substance for which he

served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense." (Filing No. 1.)

On October 21, 2025, the Government filed its Information of Prior Conviction (Filing No. 90), stating that Defendant's 2021 state conviction qualifies as a serious drug felony subjecting Defendant to an enhanced sentence for his federal charges. Defendant filed the instant Denial of the Government's Information of Prior Conviction on December 5, 2025, objecting to the Government's use of the 2021 state court conviction to enhance his sentence in this case. (Filing No. 111.)

On January 7, 2026, Defendant filed a petition to enter plea of guilty. (Filing No. 124). The Court accepted Defendant's plea on February 17, 2026. (Filing No. 138.) Defendant's sentencing is scheduled for July 23, 2026. (Filing No. 165.)

## DISCUSSION

Under 21 U.S.C. § 841(b)(1)(B), a defendant with a prior conviction for a "serious drug felony" is subject to a lengthier term of incarceration if the defendant's previous term of imprisonment was longer than 12 months and the defendant's release from that term of imprisonment was within the last 15 years. 21 U.S.C. § 841(b)(1)(B); 21 U.S.C. § 802(58). Defendant does not dispute that he was released from serving his state court sentence within the last 15 years, and it was a term exceeding 12 months. Rather, Defendant argues his 2021 state court conviction does not qualify as a "serious drug felony" because Nebraska's definition of "cocaine" was broader than the federal definition of this term in effect at the time Defendant committed his state offense.[1]  (Ex. 1.) Defendant maintains that because Nebraska law criminalized conduct that would not have violated federal law, he is not subject to the enhanced penalty of imprisonment under 21 U.S.C. § 841(b)(1)(B).

A "serious drug felony" under § 841(b)(1)(B) is defined as "an offense described in section 924(e)(2) of Title 18 for which . . . the offender served a term of imprisonment of more than 12

---

[1] A state drug conviction qualifies as a predicate offense if the state conviction "involved a drug on the federal schedules *at the time of that offense*." *Brown v. United States*, 602 U.S. 101, 123 (2024) (emphasis added).

months" and "the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(58). In turn, § 924(e)(2)(A)(ii) of the Armed Career Criminal Act ("ACCA") defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Reading these provisions together, a "serious drug felony" for purposes of the sentencing enhancement is the same as the definition of a "serious drug offense" under § 924(e)(2)(A)(ii) of the ACCA.

To determine whether a prior state conviction qualifies as a "serious drug felony" (or "serious drug offense"), courts employ a "categorical approach that looks to the statutory definition of the prior offense, not to the facts underlying a defendant's prior convictions." *United States v. Oliver*, 987 F.3d 794, 806 (8th Cir. 2021).  When using the categorical approach, courts "focus solely on whether the elements of the [prior state court conviction] sufficiently match the conduct of a serious drug felony." *Id*. (quotation omitted). "If the state offense sweeps more broadly, or punishes more conduct that the federal definition, the conviction does not qualify as a predicate offense." *Id*. (quotation omitted).  This does not end the inquiry, however.

If the state statute is found to be overbroad, courts must then determine whether the state statute is "'divisible,' meaning that it comprises multiple, alternative versions of the crime." *Id*. One way in which a state statute can be "divisible" is if the statute's "structure shows that different drug types and quantities have different punishments." *Id*.  The Eighth Circuit has also indicated that a statute could be considered divisible by drug form.  *See United States v. Owen*, 51 F.4th 292, 296 n.3 (8th Cir. 2022) (stating that even if Minnesota's drug-sale statute was divisible by cocaine isomer, it would make no difference in the case because there was no indication of the form of cocaine that the defendant sold).  "If the state statute is divisible, the sentencing court applies the 'modified categorical approach' . . . to determine which statutory phrase was the basis for the conviction." *Oliver*, 987 F.3d 806 (quotation and internal citations omitted).

The modified categorical approach allows the sentencing court to examine "a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of."

*United States v. Maldonado*, 864 F.3d 897 (8th Cir. 2017).  These documents, which are often referred to as "*Shepard* documents," include "the indictment, jury instructions, or plea agreement and colloquy." *Mathis v. United States*, 579 U.S. 500, 505 (2016) (citing *Shepard v. United States,* 544 U.S. 13, 26 (2005)). Once the specific state crime is identified, the court determines "whether it reaches more conduct than the federal definition (or the generic offense)." *Owen*, 51 F.4th at 295 (quotation omitted).

Defendant's 2021 Nebraska conviction was for attempt to violate Neb. Rev. Stat. § 28-416, which provided, in part:

> (1) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance; or (b) to create, distribute, or possess with intent to distribute a counterfeit controlled substance.

Neb. Rev. Stat. § 28-416 (2018).  At the time of Defendant's offense, Neb. Rev. Stat. § 28-405, which set out the schedules of controlled substances, identified cocaine as a Schedule II substance, and defined it as:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, including cocaine or ecgonine and its salts, optical isomers, and salts of optical isomers, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecgonine[.]

Neb. Rev. Stat. § 28-405 (2018).  The federal drug schedule's definition pertaining to cocaine (again, a Schedule II controlled substance) that was in effect at the time Defendant committed his state offense provided:

> Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and *derivatives of ecgonine or their salts have been removed*; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812 (emphasis added).

Defendant argues that Nebraska's definition of "cocaine" was categorically broader (and thus criminalized more conduct) than the federal statute because the Nebraska statute did not contain an exclusion for coca leaves where "derivatives of ecgonine or their salts have been removed," unlike the federal statute which included such an exclusion. Defendant maintains that the Nebraska statute was also broader because it did not specifically exclude Ioflupane, which, again unlike federal law, had such an exclusion. *See* 21 C.F.R. § 1308.12.

For purposes of this motion, the Government does not devote much time disputing Defendant's argument pertaining to the breadth of the Nebraska statute.  Instead, the Government argues that application of the modified categorical approach is appropriate because the Nebraska statute is divisible by drug type and drug form. According to the Government, using the modified categorical approach, it is clear Defendant's conviction was for cocaine—not for coca leaves where derivatives of ecgonine or their salts have been removed or for Ioflupane and, therefore, the sentencing enhancement applies.

The Court agrees with Defendant that Nebraska's definition of cocaine at the time of the state court offense was broader than the definition provided by federal law and consequently criminalized more conduct.  *See United States v. Jackson*, 8:24CR171, 2025 WL 2675963, at *10 (D. Neb. Sept. 18, 2025) (finding that "because the Nebraska definition of 'cocaine' did not explicitly exclude coca leaves and extracts of coca leaves from which derivatives of ecgonine have been removed while the federal definition of cocaine did explicitly exclude that substance, Nebraska law criminalized more conduct than federal law").  However, the Court likewise agrees with the Government that the Nebraska statute is divisible, and that the modified categorical approach should be applied to evaluate whether Defendant's state court offense reached more conduct than his criminal charges.

The Nebraska statute that Defendant was convicted of violating criminalized manufacturing, distributing, delivering, dispensing, or possessing with intent to manufacture, distribute, deliver, or dispense controlled substances. Neb. Rev. Stat. § 28-416 (2018).  The statute set out penalties for violations of the statute by identifying the felony classes applicable to the

5

controlled substances listed in the various schedules in Neb. Rev. Stat. § 28-405. Subsection (2) of Neb. Rev. Stat. § 28-416 provided:

> (2) Except as provided in subsections (4), (5), (7), (8), (9), and (10) of this section, any person who violates subsection (1) of this section with respect to: (a) A controlled substance classified in Schedule I, II, or III of section 28-405 which is an exceptionally hazardous drug shall be guilty of a Class II felony; (b) any other controlled substance classified in Schedule I, II, or III of section 28-405 shall be guilty of a Class IIA felony; or (c) a controlled substance classified in Schedule IV or V of section 28-405 shall be guilty of a Class IIIA felony.

Neb. Rev. Stat. § 28-416 (2018). The exception mentioned as subsection (7) pertained to felony classes for different quantity ranges of "cocaine or any mixture or substance containing a detectable amount of cocaine." Neb. Rev. Stat. § 28-416(7) (2018) (stating that any person who violated the statute with respect to cocaine or any mixture or substance containing a detectable amount of cocaine in a quantity of (a) one hundred forty grams or more was guilty of a Cass IB felony; (b) at least twenty-eight grams but less than one hundred forty grams was guilty of a Class IC felony; or (c) at least ten grams but less than twenty-eight grams was guilty of a Class ID felony). The statute also proscribed a separate penalty for Schedule I, II, or III drugs that were "exceptionally hazardous."[2]

The text of the statute demonstrates that it is divisible in several ways. As an initial matter, the Eighth Circuit previously determined that Neb. Rev. Stat. § 28-416(1) is divisible as to its conduct elements. *See Maldonado, 864 F.3d at 898* (stating that because the offenses of "manufacture, distribute, deliver, dispense, or possess with intent" were listed in the alternative, they defined multiple crimes, and that these portions of the statute were divisible). The statute is also divisible by the type and form of controlled substance involved because violations pertaining to different controlled substances and quantities of those substances are penalized differently. For instance, subsection (7) sets out separate felony levels for specific quantities of cocaine or any mixture containing a detectable amount of cocaine, whereas subsection (8) does the same with

---

[2] The term "exceptionally hazardous drug" was defined as "(a) *a narcotic drug*, (b) thiophene analog of phencyclidine, (c) phencyclidine, (d) amobarbital, (e) secobarbital, (f) pentobarbital, (g) amphetamine, or (h) methamphetamine." Neb. Rev. Stat. § 28-401 (emphasis added). A "narcotic drug," included "a compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates," with an exception for "decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine, or isoquinoline alkaloids of opium." Neb. Rev. Stat. § 28-401.

respect to "base cocaine (crack)." Neb. Rev. Stat. § 28-416(8) (2018).  Moreover, as mentioned above, "exceptionally hazardous" drugs are part of a different felony class than are other Schedule I, II, and III drugs. It is clear to the Court that the statute is not only divisible by conduct, but also by the type and form of controlled substance.  Accordingly, application of the modified categorical approach is proper.

The *Shepard* documents submitted to the Court are informative as to the part of the state statute under which Defendant was convicted. The Amended Information from state court provides that Defendant "did knowingly or intentionally attempt to manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance, to wit:  Cocaine, Schedule II controlled substance, which is an exceptionally hazardous drug." (Ex. 1.)  The Amended Information identifies Defendant's charge as "Attempt Deliver or with Intent to Deliver a Controlled Substance," and cites the statutes involved as Neb. Rev. Stat. § 28-201(4)(B)[3] and Neb. Rev. Stat. § 28-416(1)(2)(A).  (Ex. 1.)  As explained previously, § 28-416(2) set out the felony level for Schedule II drugs that were considered "exceptionally dangerous," such as cocaine which is derived or extracted from coca leaves.

Defendant is charged in this case with possession with intent to distribute 40 grams or more of fentanyl, cocaine and marijuana while having a prior serious drug felony in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 851.  (Filing No. 1.) At the time of the state court offense, § 841 prohibited the manufacture, distribution, dispensing, or possession with intent to manufacture, distribute, or dispense a controlled substance, and set out specific penalties for the types and quantities of controlled substances involved. For example, different penalties for certain quantities of the following enumerated substances were provided:

(I)    coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II)   cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III)  ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

---

[3] This statute sets out penalties for "Criminal attempt." Neb. Rev. Stat. § 28-201(4).

(IV)   any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III).

21 U.S.C. § 841(b)(1).  The definition of "cocaine" in Neb. Rev. Stat. § 28-405 as "cocaine or ecgonine and its salts, optical isomers, and salts of optical isomers" is narrower than the federal definition ("cocaine, its salts, optical and geometric isomers, and salts of isomers") and consequently falls within the federal statute's definition of the drug.  Because the Nebraska statute that Defendant was convicted of violating did not criminalize more conduct than the federal statute, Defendant's prior conviction qualifies as a prior conviction for a "serious drug felony" within the meaning of 21 U.S.C. 841(b)(1)(B). Therefore, Defendant is subject to an enhanced sentence.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Denial of the Government's Information of Prior Conviction (Filing No. 111) is denied.
2. The Government's Notice of Information of Prior Conviction (Filing No. 90) is sustained.
3. Defendant's August 11, 2021 conviction under Nebraska Revised Statute § 28-416 in the District Court of Lancaster County, Nebraska (Case No. CR21-11) qualifies as a "serious drug offense" under 21 U.S.C. § 841(b)(1)(B).

Dated this 4th day of May, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge